# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**HORLIS CLARK, JR.**                    **CIVIL ACTION NO. 18-830-JWD-RLB**

**VERSUS**                                      **JUDGE JOHN W. deGRAVELLES**

**AUGER SERVICES, INC.; PLH**         **MAG. JUDGE RICHARD L.**
**GROUP, INC.; GREG MENARD;**        **BOURGEOIS, JR.**
**MASTEC NORTH AMERICA, INC.;**
**AND MASTEC SERVICES CO, INC.**

## RULING AND ORDER

Before the Court is a Motion to Dismiss by Defendants, Auger Services, Inc. ("Auger")

and PLH Group, Inc. ("PLH")(collectively "Defendants").[1]  (Doc. 46).  Plaintiff, Horlis Clark, Jr.,

("Plaintiff" or "Clark") opposes the motion.  (Doc. 53).  Defendants replied.  (Doc. 58).  The Court

has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367 and 42 U.S.C. § 2000e-5(f)(3).  Oral

argument is not necessary.  After carefully considering the law, facts, and arguments of the parties,

Defendant's Motion to Dismiss is granted in part and denied in part.

## I.    Relevant Factual and Procedural Background

### A.    Plaintiff's Allegations

Plaintiff, an African-American male, alleges that he began his employment with Auger on

or around October 10, 1995, where he worked as an operator and laborer and was paid hourly.

(Doc. 43, p. 6).  His employment entailed working in many states, at various jobsites, on shifts,

and living in temporary housing with co-workers.  Over the course of his career, Plaintiff claims

that there were "no more than a handful of other African-Americans" and "all of Plaintiff's

supervisors were white men."  (Doc. 43, p. 7).  Plaintiff claims that he was never promoted to the

---

[1] Plaintiff named as Defendants Auger Services, Inc., PLH Group, Inc., Greg Menard, Mastec North America, Inc., and Mastec Services Co., Inc.  The instant motion is brought on behalf of Auger and PLH only.

position of operator[2] "despite receiving multiple certifications from Auger … to operate machinery." (Doc. 43, p. 8). Plaintiff alleges that lesser-qualified white men were promoted to operator over him. Also, white employees in the same position as Plaintiff earned $25.00 per hour, when Plaintiff only earned $22.50 per hour. (*Id.*).

Co-workers and supervisors allegedly used racially derogatory terms on a consistent basis, such as "blue-gums", "t-nig", "nigger", "token black", and "splif". (*Id.*).

Plaintiff describes an incident involving Bryan Beck, a vice-president of "the company".[3] Beck, Van Guidry, and Plaintiff were driving to Lake Charles, Louisiana, when a vehicle operated by an unknown African-American man "cut off" the vehicle operated by Beck. Beck allegedly remarked that the "goddamn nigger cut me off." (*Id.*). Plaintiff also generally alleges that he was treated like a "servant" by his supervisors by being "made" to wash their vehicles and do personal odd jobs. (Doc. 43, p. 10).

Greg Menard, Plaintiff's immediate supervisor, was hired in February 2012 and allegedly harassed and dehumanized Plaintiff. Menard subjected Plaintiff to racially-charged verbal and physical harassment and abuse and wore hats containing "rebel flags" or "southern pride" on them. In the summer of 2015, Menard and Plaintiff were working at a jobsite in Alabama when Menard "summoned" Plaintiff to retrieve tools out of the tool trailer. When Plaintiff bent over to get the tools, Menard allegedly looped a noose around Plaintiff's neck, tightened it, and ordered Plaintiff to stand while Menard took pictures ("Alabama noose incident"). The photos were taken on a company cell phone and the photos were shared with other employees. (*Id.*). Plaintiff was "traumatized, anxious, extremely shaken, and upset" over the incident. (Doc. 43, p. 11). He claims

---

[2] In Paragraph 16 of his operative Complaint, Plaintiff avers that he "worked as an operator and laborer". (Doc. 43, p. 6). However, in Paragraph 26, Plaintiff alleges that he was "never promoted to the position of operator". (Doc. 43, p. 8).
[3] It is unclear to which company Plaintiff is referring in Paragraph 36 of the operative Complaint.

that he did not immediately report the incident because he was afraid of retaliation and/or harm that Menard and other employees may inflict on him.  (*Id*.).

In October of 2016, Plaintiff alleges that he was working at a jobsite in Mississippi "in a cottonfield."  (*Id*.).  Menard allegedly "commanded" Plaintiff to come to him.  (Doc. 43, pp. 11-12).  As Plaintiff walked to him, Menard told him to "stop right there".  (Doc. 43, p. 12).  Two employees of the general contractor, MasTec Services Co., Inc. ("MasTec"), were located in a bucket connected to a truck, hovering above Plaintiff, and they lowered a noose over Plaintiff's head and tightened it.  Menard straightened the noose around Plaintiff's neck and took pictures using his phone.  Plaintiff claims that Menard said, "see, ain't me this time, its them" ("Mississippi noose incident").  Menard took pictures, laughed, and then told Plaintiff to "get back to work". (*Id*.).  Plaintiff felt "humiliated, embarrassed, degraded, sick and subhuman, as well as afraid for his life."  (Doc. 43, p. 13).  Plaintiff did not immediately report the incident because he was embarrassed and afraid of retaliation from Menard and other employees.  He did not want to risk losing his job.  (*Id*.).

Around April 6, 2017, Plaintiff was working on a jobsite in Texas.  He began feeling dizzy, weak and was having chest pains.  He was taken to a hospital emergency room and was told that he was dehydrated and suffering from heat exhaustion.  The treating physician instructed Plaintiff to take off of work for a few days, which Plaintiff relayed to Menard.  Plaintiff alleges that Menard responded by saying, "man, you just trying to get out of work" and "I wish you would have died." (Doc. 43, p. 14).  Plaintiff was scared and afraid he would lose his job if he took the time off from work.  (Doc. 43, p. 15).

Menard's action "took an immense, burdensome toll on Plaintiff both mentally and physically."  Plaintiff sought medical treatment and was told that he was experiencing post-

traumatic stress from the workplace harassment. His treating physicians recommended that he take time off of work to "ameliorate his symptoms" and recover from the trauma. (*Id*.).

In May of 2017, Plaintiff reported the alleged racial epithets, workplace harassment, Alabama noosing incident, Mississippi noosing incident, and "everything to which he had been subjected to" to Beck. He was then transferred to a different jobsite "where he made less money". (*Id*.). On May 23, 2017, a meeting was held with Plaintiff and various executives of Auger. Plaintiff reported what Menard had allegedly done and said and advised that photographs were on Menard's phone. (Doc. 43, p. 16). Menard was later fired and his phone was confiscated. Plaintiff was then transferred back to his prior jobsite. (*Id*.).

Plaintiff alleges that upon his return to his prior jobsite, he was treated "very poorly", which Plaintiff perceived was in retaliation for reporting Menard. (*Id*.). Plaintiff felt uncomfortable and was in fear of his safety because he worked with many of Menard's friends. (Doc. 43, p. 17).

"At some point" in May 2017, Plaintiff was at a jobsite apartment with his roommate and noticed something strange floating in his juice. He was scared to eat or drink anything because he believed that employees were trying to poison him in retaliation for reporting Menard. He also could not sleep at night because he feared that he would be physically harmed while he slept. (*Id*.). Plaintiff specifically alleges that he "feared that he would be taken against his will and lynched from a tree." (*Id*.).

Plaintiff alleges that he continued to suffer and was placed on medical leave on May 26, 2017 due to post-traumatic stress and a fear of retaliation. (Doc. 43, p. 18). Plaintiff claims that all of the above alleged incidents and verbal abuse created a hostile work environment which ultimately led to Plaintiff being constructively discharged on October 27, 2017. (Doc. 43, p. 19). Plaintiff claims that Defendants engaged in "unlawful employment practices" including

"intentional discriminatory treatment resulting in Plaintiff being subjected to a hostile work environment as well as discriminatory employment conditions which prevented Plaintiff from earning a fair hourly wage and from being promoted, when compared to the hourly wage and promotions of similarly situated white employees."  (Doc. 43, p. 20).

In his Complaint, Plaintiff alleges causes of action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq., as amended by the 1991 Civil Rights Act, 42, U.S.C. § 1981a ("Title VII") for racial discrimination, harassment, and retaliation in the workplace, (Doc. 43, p. 24); under the Louisiana Employment Discrimination Law, La. R.S. 23:332, *et. seq*., and under La. R.S. 51:2256 for retaliatory actions and conspiracy, (Doc. 43, pp. 25-26); for retaliation under the Louisiana Whistleblower Statute, La. R.S. 23:967, (Doc. 43, p. 26); for negligent and intentional infliction of emotional distress under Louisiana state law, (Doc. 43, pp. 26-27); for assault and battery under Louisiana state law, (Doc. 43, p. 28); and for punitive damages, (Doc. 43, pp. 28-29).

### B.     The EEOC Process

On June 6, 2017, Plaintiff was not represented by legal counsel.  He completed and submitted an Intake Questionnaire to the Equal Employment Opportunity Commission ("EEOC").  (Doc. 43, p. 21).  Plaintiff attached a copy of the Intake Questionnaire to his operative Complaint.  (Doc. 43, pp. 34-37).  The copy of the Intake Questionnaire attached to the Complaint did not include the statement of facts that Plaintiff claims he submitted with the Intake Questionnaire; however, Plaintiff included the statement of facts with his opposition to the subject motion.  (Doc. 53-1, pp. 6-12).  As set forth in detail below, Plaintiff's allegations are detailed and contain corresponding dates.  Also, the Intake Questionnaire reflects that Plaintiff "wants to file a charge

of discrimination, and … authorize[s] the EEOC to look into the discrimination" that he describes. (Doc. 53-1, p. 5).

The EEOC responded to Plaintiff by letter dated July 5, 2017. (Doc. 43, p. 21). The letter reflects that the EEOC reviewed Plaintiff's allegations, but the EEOC found that "not enough" information was provided to determine how they should "handle this case". The EEOC suggested that an interview "is the best way to obtain the information needed," and asked Plaintiff to contact the EEOC to arrange an interview. (Doc. 43, p. 39).

Plaintiff then retained legal counsel, who responded to the EEOC by issuing a letter on Plaintiff's behalf, dated August 21, 2017. (Doc. 43, p. 22). The letter asked the EEOC to consider counsel's letter as Plaintiff's "formal request for the EEOC to file a charge of discrimination against Auger and PLH." (Doc. 43, p. 41). The letter included detailed allegations of race discrimination, wage discrimination, a hostile work environment, a failure to promote, and physical assault. (Doc. 43, pp. 41-43).

Plaintiff filed a formal Charge of Discrimination with the EEOC on May 29, 2018. (Doc. 43, pp. 23, 45-48). Plaintiff alleges in his operative Complaint that the formal charge was an amendment to the Intake Questionnaire which "relates back" to the date of the Intake Questionnaire. Plaintiff specifically alleges that the Intake Questionnaire was a "Charge of Discrimination". (Doc. 43, p. 22). A second formal Charge of Discrimination was filed on June 27, 2018. (Doc. 43, pp. 23, 50-52).

The EEOC issued a Right to Sue letter on July 6, 2018. (Doc. 43, pp. 23, 54).

### C. Present Motion

Defendants move this Court to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss, the court may consider "the complaint, its proper

attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.*, No. 14-11300, 2018 WL 2943339, *3 (5th Cir. 2018) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey*, 540 F.3d at 338) (citations and internal quotation marks omitted)).  The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim.  *See Werner v. Dept. of Homeland Sec.*, 441 F. App'x 246, 248 (5th Cir. 2011); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

The Court will consider the various forms, letters, charges and notices from and filed with the Louisiana Commission on Human Rights and the EEOC.  These documents are specifically referenced by Plaintiff in his operative Complaint and/or attached to his operative Complaint.  Further, the Court may take judicial notice of the EEOC charges, which are public record and whose authenticity is not disputed.  *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986); *Cinel v. Connick*, 15 F.3d 1338, 1346 n. 6 (5th Cir. 1994); *Thomas v. Lowe's Home Ctrs., Inc*., No. 13-0779, 2014 WL 545862, at *2 n. 5 (W.D.La. Feb. 10, 2014); *Tucker v. Waffle House, Inc*., No. 12-2446, 2013 WL 1588067, at *2, *6 (E.D.La. Apr. 11, 2013) (citing *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011)).  No party challenged the Court's consideration of any of these items.

### 1.  Defendants' Argument

Defendants seek dismissal of Plaintiff's "Second Amended Petition for Damages" based on the following grounds: (1) Plaintiff's claims under Title VII for failure to promote, disparate pay, harassment and retaliation are untimely; (2) Plaintiff failed to timely exhaust his

administrative remedies regarding his disparate pay and retaliation claims under Title VII; (3) Plaintiff's claims under the LEDL for failure to promote, disparate pay, harassment and retaliation have prescribed; (4) Plaintiff's claims under La. R.S. 23:967 and La. R.S. 51:2256 have prescribed; (5) Plaintiff's claims under Louisiana state law for assault, battery, negligent and intentional infliction of emotional distress have prescribed; (6) Plaintiff's negligence-based claims are precluded by the exclusivity of the Louisiana Workers' Compensation Act; (7) Plaintiff failed to state a claim for constructive discharge under Title VII and the LEDL; and (8) Plaintiff failed to plead an employment relationship with PLH, who should, therefore, be dismissed. (Doc. 46, pp. 1-5).

The underlying premise of most of Defendants' arguments is that Plaintiff's Intake Questionnaire, dated June 6, 2017, is not equivalent to and should not be considered as a "charge of discrimination". (Doc. 50, pp. 7-20). Additionally, the EEOC responded to Plaintiff's Intake Questionnaire on July 5, 2017, stating that it required additional information in order to proceed with processing Plaintiff's claims. (Doc. 43, p. 39). Defendants argue that the July 5, 2017 letter evidences that Plaintiff's Intake Questionnaire was an inquiry, not a charge, and it did not trigger an investigation or notice to the employer charged with alleged discrimination. (Doc. 50, p. 10). Next, when Plaintiff's counsel responded to the EEOC by letter dated August 21, 2017, Defendants argue that the letter was late and beyond the time period provided by the EEOC in its July 5, 2017 letter. (Doc. 50, pp. 10-11). Because a formal Charge of Discrimination was not filed until May 23, 2018, Defendants contend that this charge was untimely as it was well beyond the 300-day period since the last date of alleged discriminatory actions. (Doc. 50, pp. 11-12). A second formal Charge of Discrimination was filed on June 27, 2018, (Doc. 43, pp. 50-52), and a Notice of Right to Sue was issued on July 6, 2018, (Doc. 43, p. 54) .

Plaintiff contends that the two formal charges were supplements to his original "charge", which is the Intake Questionnaire, and relate back to the date of the original "charge"/Intake Questionnaire. (Doc. 53, pp. 1-7). Most issues raised by Defendants' motion are based upon whether the Intake Questionnaire is considered a "charge of discrimination" in determining the timeliness of Plaintiff's claims and the scope of Plaintiff's charge.

Defendants first move to dismiss Plaintiff's Title VII claims as time-barred. An aggrieved employee must file a charge of discrimination with the EEOC within 300 days from the last act of alleged discrimination. Defendants argue that the last day of alleged discrimination would have been May 26, 2017, when Plaintiff left his employment on medical leave. Therefore, a charge of discrimination was due by March 22, 2018. Since Plaintiff's first formal charge of discrimination was filed on May 23, 2018, it was late, and all of Plaintiff's claims under Title VII are time-barred. (Doc. 50, pp. 7-9).

Acknowledging that Plaintiff alleges in his operative Complaint that his Intake Questionnaire was his initial "charge", Defendants argue that the Intake Questionnaire was not a "charge", but an "inquiry". According to Defendants, this is evidenced by the fact that the EEOC responded to the Intake Questionnaire with a letter stating that it needed additional information and could not proceed without the additional information. Also, the EEOC letter contained a warning that Plaintiff must respond within a certain amount of time in order to preserve the timeliness of his claims and allegations. Defendants also point to the fact that the EEOC only assigned an inquiry reference number to Plaintiff's Intake Questionnaire, not a charge reference number. (Doc. 50, pp. 9-11). Finally, Defendants attach to their motion a copy of the EEOC's return to Defendants' Freedom of Information Act ("FOIA") request "in connection with the operative charge number". (Doc. 46-1). Defendants argue that since the Intake Questionnaire,

July 2017 letter from the EEOC, and Plaintiff's counsel's August 2017 letter were not contained in the FOIA return, then they were not considered to be part of Plaintiff's charge of discrimination or part of the investigative file. (Doc. 50, p. 11). Based on all of the above, as well as the fact that Plaintiff's Intake Questionnaire did not set the "machinery in motion" for an investigation, Defendants' argue that Plaintiff's claims under Title VII are untimely. (Doc. 50, pp. 16-20).

Second, Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his disparate pay claim. Alternatively, Defendants contend that this claim is untimely. (Doc. 50, pp. 20-22). Defendants argue that the statute of limitations of a disparate pay claim is governed by the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"), 42 U.S.C. § 2000e-5(e)(3)(A), and each paycheck that is paid at an allegedly discriminatory rate is a separate act of discrimination such that it resets the tolling of prescription for filing an EEOC charge each time. (Doc. 50, p. 20). Therefore, Plaintiff must file an EEOC charge within 300 days of his last paycheck. (Doc. 50, p. 21). Again relying upon the date of Plaintiff's first formal EEOC Charge of Discrimination, which was filed on May 29, 2018, Defendants argue that it was greater than 300 days since his last paycheck, which would have been around August 1, 2017. Additionally, Defendants argue that Plaintiff's Charge of Discrimination does not allege a disparate pay claim sufficiently to fall within the scope of Plaintiffs' charge. (Doc. 50, pp. 21-22).

Next, Defendants argue that Plaintiff's claim of a hostile work environment under Title VII is untimely. Plaintiff's last day of work at Auger was May 26, 2017. Therefore, Defendants contend, Plaintiff was required to file an EEOC charge asserting a hostile work environment claim no later than March 22, 2018, and Plaintiff's first formal Charge of Discrimination was filed May 29, 2018. (Doc. 50, p. 22).

Defendants next argue that Plaintiff failed to exhaust his administrative remedies as to his retaliation claim under Title VII. Alternatively, Defendants argue that the claim is untimely. (Doc. 50, pp. 23-24). Defendants argue that any alleged retaliatory conduct occurred before Plaintiff took medical leave on May 26, 2017. Thus, Plaintiff's Charge of Discrimination dated May 29, 2018, was greater than 300 days after the last alleged retaliatory acts. Also, Defendants argue that neither of the charges filed by Plaintiff contain allegations of retaliation within them, and the reference to a retaliation claim in Plaintiff's Intake Questionnaire is insufficient because it is not a formal charge. (Doc. 50, pp. 23-24).

Defendants argue that Plaintiff's claims of discrimination under the LEDL are also prescribed. The prescriptive period for a claim under the LEDL is one year. This prescriptive period may be suspended during the investigation of a claim for up to six months. (Doc. 50, p. 24). Defendants apply this prescriptive period to Plaintiff's claims, concluding that Plaintiff is entitled to only a 38-day suspension and that any alleged discriminatory conduct that took place before August 4, 2017 (September 11, 2018 minus one year and 38 days) is time-barred. (Doc. 50, p. 25). Defendants also contend that Plaintiff's failure to promote, disparate pay, hostile work environment, and retaliation claims under the LEDL are untimely. (Doc. 50, pp. 25-26).

Plaintiff asserted claims of retaliation and conspiracy under La. R.S. 23:967 and La. R.S. 51:2256, and Defendants aver that these claims are prescribed. A one-year prescriptive period applies under Louisiana state law. Since Plaintiff filed suit after May 26, 2018 (one year from Plaintiff's last date of work with Auger), Defendants move to dismiss these claims as time-barred. (Doc. 50, pp. 26-27).

Similarly, Defendants argue that all of Plaintiff's claims under Louisiana state law are prescribed as the one-year statute of limitations applies. Therefore, Defendants conclude,

Plaintiff's claims of assault and battery and negligent and intentional infliction of emotional distress are time-barred.  (Doc. 50, pp. 27-28).

Alternatively, Defendants argue that any negligence-based claims under Louisiana state law are barred by the exclusivity of the Louisiana Workers' Compensation Act ("LWCA").  Any employee injured while in the course and scope of his employment is limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort.  Therefore, Plaintiff's claims based in negligence, if not prescribed, are barred by the exclusivity of the LWCA.  (Doc. 50, p. 28).

Plaintiff alleges in his operative Complaint that he was constructively discharged in October of 2017.  Defendants move to dismiss Plaintiff's constructive discharge claim because Plaintiff failed to properly state a claim for constructive discharge under Title VII or the LEDL.  (Doc. 50, p. 29).  Defendants' argument is based on the elements of a claim for constructive discharge, and Defendants contend that Plaintiff's allegations are insufficient to establish a claim for constructive discharge.  Plaintiff's allegations of a hostile work environment do not rise to the "greater severity or pervasiveness" of harassment that is required for a constructive discharge claim.  (Doc. 50, p. 30).  Additionally, Defendants argue that Plaintiff's "failure to return to work" and "refusal to allow Auger an opportunity to remedy any concern he may have had before he abandoned his job" is "fatal" to his constructive discharge claim.  (Doc. 50, pp. 31-32).

Finally, Defendants  contend that Plaintiff fails to plead any allegations of wrongdoing by PLH or of an employment relationship with PLH.  Therefore, PLH cannot be found liable to Plaintiff and should be dismissed as a Defendant.  (Doc. 50, pp. 32-34).  Defendants note that Plaintiff's operative complaint contains "threadbare, legal conclusions" of a joint employer relationship and are insufficient to defeat a motion to dismiss.  (Doc. 50, p. 33).

### 2. Plaintiff's Argument

Plaintiff contends that his June 6, 2017 Intake Questionnaire was a "charge of discrimination". (Doc. 53, p. 1). Plaintiff argues that an intake questionnaire constitutes a charge of discrimination under the law if it contains the information set forth in the EEOC regulations governing charges and expresses the charging party's wish that the EEOC take action on the employee's behalf. (Doc. 53, p. 2 (citing *Kirkland v. Big Lots Store, Inc.,* 547 F. App'x 570, 572 (5th Cir. 2013)). The intake questionnaire must identify the parties, the important dates, and the reasoning behind the claim of discrimination and initiate the administrative proceedings of the EEOC. (Doc. 53, p. 2 (citing *Redford v. KTBS, LLC*, 135 F.Supp.3d 549, 557 (W.D. La. 2015)). Plaintiff argues that he met all of these requirements and checked "Box 2" on his Intake Questionnaire, signifying that he intended his Intake Questionnaire to serve as the "charge". (Doc. 53, p. 3). Also, Plaintiff argues that he was not represented by counsel at the time that he completed the questionnaire and that the "utmost of liberality" should be extended to interpreting intake questionnaires completed by laymen. (*Id.* (citing *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982)).

Next, Plaintiff argues that his Intake Questionnaire or "charge" is deemed filed on July 5, 2017 because that is when the EEOC acknowledged the Intake Questionnaire via letter. (Doc. 53, p. 3). The EEOC requested that Plaintiff contact the EEOC to provide additional information and an interview to further the process. Plaintiff contends in his opposition that he timely contacted the EEOC and met with the EEOC at its New Orleans office for an interview. (Doc. 53, p. 4).[4] Plaintiff then hired counsel, who sent a letter to the EEOC on August 21, 2017, providing additional information and re-iterating Plaintiff's prior request that the EEOC file a charge of

---

[4] While Plaintiff argues that the interview took place, this is not alleged in Plaintiff's operative Complaint.

discrimination against Defendants. Plaintiff argues that "it is evident that Plaintiff actively pursued his rights under Title VII and made consistent efforts both to abide by the administrative process and to preserve his claim." (Doc. 53, p. 4).

Plaintiff argues that his first formal Charge of Discrimination filed on May 29, 2018 relates back to the July 5, 2017 filing date of the June 6, 2017 EEOC Intake Questionnaire. (Doc. 53, p. 5). A "sworn charge" can relate back to an informal intake questionnaire that describes the discriminatory conduct and identifies the parties. (*Id.* (citing *Conner v. Louisiana Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007); *Lynch v. Texas Comm'n on Enutl. Quality*, 2010 WL 11530834, *3 (E.D. Tx. 2010)). Plaintiff suggests that his May 29, 2018 Charge of Discrimination should be treated as an amendment to his June 6, 2017 Intake Questionnaire because the Charge of Discrimination "(1) clarified and amplified the initial discrimination allegations; (2) alleged additional acts constituting  unlawful employment practices that were related to or grew out of the original allegations; and (3) cured any defects, including the verification defect." (Doc. 53, pp. 5-6).

Plaintiff argues that the fact that Defendants' FOIA request did not elicit the intake questionnaire or any other related documents is of "no consequence", because these types of documents "are exempt from public disclosure". Plaintiff's own FOIA request was denied. (Doc. 53, p. 6). Also, Plaintiff should not be prejudiced by the EEOC's "failure to properly process a grievance after it has been filed." (*Id.* (citing *Carter v. Smith Food King*, 765 F.2d 916, 924 (9th Cir. 1985)).

Regarding timeliness, Plaintiff argues that all of his Title VII claims are timely. His argument is based upon the premise that his June 2017 Intake Questionnaire is a "charge" and that the May 2018 Charge of Discrimination "relates back" to the "charge". (Doc. 53, p. 7).

Plaintiff avers that he exhausted his administrative remedies with respect to his retaliation and disparate pay claims under Title VII. (*Id.*). Plaintiff points to his Intake Questionnaire where he "checked the box" stating that his complaints of discrimination were based on race and retaliation. (*Id.*). Plaintiff also relies upon the statement of alleged facts that he attached to his questionnaire and the letter from his counsel to the EEOC that detailed allegations related to wage discrimination and retaliation. (Doc. 53, pp. 7-9).

The timeliness of Plaintiff's hostile work environment claim is based on Plaintiff's allegations of employment discrimination that occurred over many years, "from *at least* June of 2015 and up until May 26, 2017." Thus, Plaintiff argues, not only does he sufficiently allege acts of discrimination within 300 days of the filing of this "charge", but the continuing violation doctrine also applies, rendering his hostile work environment claim timely. (Doc. 53, p. 9 (citing *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 289 (5th Cir. 2008)).

Finally, Plaintiff argues that his state law claims are timely based on the maximum six-month suspension. Plaintiff filed suit within 18 months of the last alleged discriminatory acts. (Doc. 53, pp. 9-10). In one sentence, Plaintiff states that this same computation applies to Plaintiff's claim for intentional infliction of emotional distress. (Doc. 53, p. 10 (citing *Bustamento v. Tucker*, 607 So.2d 532, 538-39 (La. 1992)). Plaintiff relies upon his allegation of constructive discharge on October 27, 2017 to render his claims of retaliation and conspiracy under La. R.S. 23:967 and La. R.S. 51:2256 timely. No explanation or legal authority is provided. Last, Plaintiff states that he "sufficiently pled" a claim for constructive discharge and that he "be allowed to conduct limited discovery" to address Defendants' arguments, including PLH's liability. (Doc. 53, p. 10).

### 3. Defendants' Reply

Defendants maintain that Plaintiff's Intake Questionnaire does not constitute a formal "charge". Defendants claim that Plaintiff "conveniently ignores the fact" that the EEOC did not consider the questionnaire to be a charge, pointing to the EEOC's July 2017 letter. (Doc. 58, pp. 1-2 (citing *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 572 (5th Cir. 2013)).

Also, Defendants argue that the formal May 2018 Charge of Discrimination does not relate back to the filing of the questionnaire for "two reasons". (Doc. 58, p. 2). First, the relation back argument fails because the questionnaire does not constitute a charge. The formal charge can only amend or relate back to another charge. (*Id.*). Second, Plaintiff did not allege that the May 2018 Charge of Discrimination "relates back" to the June 2017 Intake Questionnaire in his operative Complaint. (Doc. 58, pp. 2-3). No further explanation or legal authority is provided. Defendants then offer a third reason that the formal charge does not relate back to the date of the intake questionnaire: because the formal charge was an "addition" to the questionnaire, not an "amendment". Defendants argue that the EEOC did not treat the formal charge as an amendment, therefore it is not one, and it is an addition because it adds claims and facts that are not contained in the questionnaire. (Doc. 58, p. 3).

Because Plaintiff's retaliation and disparate pay claims are not contained in the May 2018 formal Charge of Discrimination, they should be dismissed. (Doc. 58, p. 3).

Defendants argue that Plaintiff's position that his hostile work environment claim is timely "fails for two reasons". First, Plaintiff's questionnaire is not a charge, therefore Plaintiff's argument is "moot". Second, Plaintiff cannot prove that his acts of harassment are related. The alleged acts occurred months apart and involved different people. (Doc. 58, p. 4).

Defendants maintain that Plaintiff's state law claims are untimely because the one-year statute of limitations runs from May 26, 2017, without suspension. (Doc. 58, pp. 4-5).

Finally, Defendants state that Plaintiff's claims adverse to PLH "are abandoned and/or waived" because Plaintiff failed to brief these claims in his opposition. (Doc. 58, p. 5).

## II.    Motion to Dismiss Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained, "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. 'Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].'

*Ormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of

the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the 'reasonable inference' the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a 'reasonable expectation' that 'discovery will reveal relevant evidence of each element of the claim.' *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" "has been asserted". *Id.* at 503.

## III.    Discussion

### A.    Claims under Title VII

#### 1.    Timeliness – all claims

Both parties agree that Plaintiff completed an Intake Questionnaire with the EEOC on June 6, 2017, and that Plaintiff did not submit a formal Charge of Discrimination until May 29, 2018. Defendants argue that Plaintiff's Intake Questionnaire is not equivalent to a Charge of Discrimination and, therefore, does not interrupt the tolling of prescription to file a Charge of Discrimination. In other words, a formal Charge of Discrimination must have been filed with the EEOC by March 22, 2018; instead, Plaintiff filed a Charge of Discrimination on May 29, 2018, which Defendants argue is too late, and his claims under Title VII are untimely.

Plaintiff argues that his Intake Questionnaire met the requirements to serve as a "charge of discrimination" sufficient to have the EEOC administrative wheels put in motion. Since the Intake Questionnaire was filed on June 6, 2017, and recognized by the EEOC on July 5, 2017, long before

the March 22, 2018, tolling date, Plaintiff argues that his claims under Title VII are timely and have not prescribed. Therefore, the analysis of the timeliness of Plaintiff's claims turns on (1) whether the Intake Questionnaire qualifies as a "charge of discrimination" sufficient to toll prescription, and (2) whether the Intake Questionnaire was timely.

Turning to the operative complaint, Plaintiff alleges that he was placed on medical leave on May 26, 2017, (Doc. 43, p. 18); that he was afraid to return to work, (Doc. 43, p. 19); that the hostile work environment ultimately led to him being constructively discharged on October 27, 2017, (*id*.); that he completed and submitted an EEOC Intake Questionnaire on June 6, 2017, without the assistance of legal counsel, (Doc. 43, p. 21); that the Intake Questionnaire included the name and address of Plaintiff's employer, a statement of facts with dates constituting unlawful employment practices, and was intended to initiate the administrative process, (*id*.); that the EEOC responded to Plaintiff on July 5, 2017, advising that more information was needed, (*id*.); that Plaintiff retained counsel to assist him in response to the letter from the EEOC, (Doc. 43, p. 22); and that legal counsel responded to the EEOC on Plaintiff's behalf on August 21, 2017, re-asserting Plaintiff's request contained in his Intake Questionnaire that the EEOC begin an investigation and notice the defendants with a charge of discrimination, (Doc. 43, p. 22). Plaintiff's operative complaint specifically alleges that the Intake Questionnaire "made clear" Plaintiff's intent to file a Charge of Discrimination as evidenced by Plaintiff's selection of "Box 2", indicating that he "wants to file a charge of discrimination" and "authorizes the EEOC to look into the discrimination" described in the questionnaire. (*Id*.). Plaintiff avers that his Intake Questionnaire "met the requirements" of a charge and of Title VII exhaustion of administrative remedies. (*Id*.). In fact, Plaintiff equates his June 6, 2017, Intake Questionnaire with a formal Charge of Discrimination in Paragraphs 90 and 91 of his operative Complaint. (*Id.*).

A private plaintiff must exhaust his administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court. *Taylor v. Books-A-Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1). Generally, Title VII's enforcement provisions require that an EEOC charge must be filed within 180 days after the alleged unlawful employment practice has occurred. 42 U.S.C. § 2000e-5(e)(1). However, a claimant has an extended, 300-day period in which to file an EEOC charge in a "deferral state," such as Louisiana. *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).

The Fifth Circuit has observed that "[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003)(quoting *EEOC v. Shell Oil Co*., 466 U.S. 54, 77 (1984)). A charge must be "in writing under oath or affirmation," must sufficiently identify the parties, and must generally describe the action or practices that are the basis of the complaint. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.12(b). The governing regulation directs that each charge should contain: (1) the full name, address, and telephone number of the claimant (unless excepted); (2) the full name and address of the person who allegedly committed the action or practices complained of; (3) a "clear and concise statement of the facts" of the alleged unlawful employment practices, including pertinent dates; (4) the approximate number of employees or members of the employer or labor union who allegedly committed the action or practices complained of, if known; and (5) information regarding whether and when proceedings concerning the alleged unlawful employment practice(s) have commenced before a state or local agency tasked with enforcing fair employment laws. 29 C.F.R. § 1601.12(a). The regulations also provide that "[a] charge may be amended to cure technical defects or

omissions," and that such amendments "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

The Fifth Circuit has also previously held that "an intake questionnaire" that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to "'set the administrative machinery in motion.'" *Conner*, 247 F. App'x at 481 (quoting *Price v. SW Bell Tel. Co*., 687 F.2d 74, 78 (5th Cir. 1982)). In *Price*, the Fifth Circuit reversed and remanded a grant of summary judgment for the defendant in a Title VII sex discrimination action in which a *pro se* claimant timely filed an intake questionnaire with the EEOC that did not fulfill all of the technical regulatory requirements of a charge. *Price*, 687 F.2d at 78-79. Notwithstanding the deficiencies of the intake questionnaire relative to the requirements of a charge, the agency still deemed the information provided to be sufficient to take action and notify the defendant. *See, id.* at 76. The plaintiff met with an EEOC specialist within the statutorily prescribed period "to discuss her situation, including the possibility of charging [the defendant] with sex discrimination." *Id.* The EEOC specialist incorporated the factual basis of the plaintiff's complaint into an intake questionnaire on the plaintiff's behalf. *Id.* Subsequently, the EEOC advised the defendant in writing that the plaintiff had filed a charge of discrimination, further enclosing an "official Notice of Charge." *Id.*

Over the next two months, the plaintiff in *Price* sent two items of correspondence to the EEOC specialist to update her file and provide certain papers. *Id.* The EEOC specialist then responded to the plaintiff by mailing her "a draft of a proposed amended charge outlining certain instances of discriminatory treatment: and instructing her to sign and return the amended charge within thirty days, under penalty of dismissal. *Id.* Instead of timely returning the signed, amended

charge, the plaintiff purportedly mailed the EEOC specialist a document detailing discriminatory incidents. *Id*. The EEOC recorded no activity in the matter during the next four and one-half months. *Id*. At the end of this period, the EEOC sent the plaintiff the statutory Notice of Right to Sue and notified the defendant of the letter's issuance. *Id*. The plaintiff filed suit in federal court ten days later. *Id.* The Fifth Circuit held that the plaintiff's "failure to file a 'perfected' charge" within the statutory filing period did not prejudice the defendant, and reasoned that the defendant's "receipt of the official notice of the charge … fulfilled the congressional purpose of imposing a filing limitation, the provision of 'prompt notice to the employer.'" *Id*. at 79 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)); *see also Harris v. Honda*, 213 F. App'x 258, 262 (5th Cir. 2006)(citing the Seventh Circuit in finding that "the primary difference between intake questionnaires and formal charges of discrimination is the notification requirement of a charge"); *cf. Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008)(concluding that an intake questionnaire and affidavit requesting the agency take action to end the alleged discrimination, filed with the EEOC by an Age Discrimination in Employment Act complainant, could be deemed a charge because it could be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee").

In 2007, the Fifth Circuit reiterated its holding in *Price*. *See Conner*, 247 F. App'x 480. The *Conner* court reversed and remanded a race and disability discrimination and retaliation action that was dismissed by the district court on the ground that the plaintiff failed to timely file a verified EEOC charge. *Id*. at 481. The plaintiff filed an EEOC intake questionnaire 280 days after her employment was terminated. *See, id*. The EEOC issued an official notice of charge to the plaintiff's employer on the next day, and the plaintiff filed a verified charge of discrimination one

month later. *Id.* The district court dismissed the complaint and denied the plaintiff's motion for reconsideration because it concluded that the verified EEOC charge was untimely filed. *Id.* The Fifth Circuit held that the district court incorrectly dismissed the complaint for two reasons. First, the appeals court concluded that "the intake questionnaire was sufficient to constitute an EEOC charge" because "it informed the EEOC of the identity of the parties and described the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge." *Id.* Second, the Court noted that the intake questionnaire was filed within the statutorily prescribed time period.

Defendants urge the Court to apply *Henderson v. Wal-Mart Stores Texas, LLC*, 2010 WL 1525551 (S.D. Tex. Apr. 14, 2010), where the court dismissed the pro se plaintiff's Title VII discrimination and retaliation claims because she failed to timely file a charge of discrimination, instead of applying *Conner*, 247 F. App'x 480. (Doc. 50, pp. 13-16). Defendants argue that because the EEOC did not treat Plaintiff's Intake Questionnaire as a charge, it should not be regarded as a charge, just as the *Henderson* court did not consider the plaintiff's letter to be a charge because the EEOC did not consider it to be a charge. This Court applies *Conner* because this Court is bound by the Fifth Circuit and because of the more closely aligned facts presented.

Pursuant to the standards of Rule 12(b)(6), the Court first notes that it must liberally construe the allegations of the operative Complaint to determine whether a plausible claim is plead on the face of the Complaint. As set forth above, the operative Complaint reflects that an Intake Questionnaire was filed with the EEOC weeks after Plaintiff took medical leave and several months before Plaintiff alleges that he was constructively discharged. The Court has reviewed the Intake Questionnaire, as it is permitted to do on a motion to dismiss, and finds that the questionnaire contains (1) the full name, address, and telephone number of Plaintiff; (2) the full

name and address of the parties that Plaintiff alleges committed the acts or practices complained of; (3) a detailed statement of the facts of the alleged unlawful practices including dates; (4) some names of some employees who allegedly committed the acts or practices complained of; and (5) general reference to the fact that no other entity has been informed of these practices or allegations. Thus, the allegations of the operative Complaint and the actual Intake Questionnaire support Plaintiff's contention that the questionnaire complies with the regulations governing "charges" filed with the EEOC.

Further, the fourth page of the Intake Questionnaire instructs, "Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire." (Doc. 53-1, p. 5). The first option, "Box 1", states, "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." (*Id.*). The second option, "Box 2", is the option that Plaintiff selected. It states:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

(*Id.*). Immediately beneath the selected "Box 2" is what appears to be Plaintiff's signature and the date June 6, 2017. (*Id.*).

Defendants argue that because the Intake Questionnaire lacked certain information that the EEOC required in order to proceed with the administrative process, as evidenced by the EEOC's letter dated July 5, 2017,[5] that it cannot be regarded as a "charge". (Doc. 58, p. 1 (citing *Green v.*

---

[5] The July 5, 2017, letter from the EEOC to Mr. Clark states, "Your correspondence (a letter, intake questionnaire or other communication) concerning allegations of employment discrimination by the respondent named above has been

*Hosp. Serv. Dist. of West Feliciana Parish*, 16-233, 2017 WL 1097194, *4 (M.D. La. 2017)). In *Green*, this Court accepted an intake questionnaire as a charge of discrimination in determining whether the plaintiff's claims were timely. The Court stated in *Green*, "Examining the EEOC documents provided, it is clear that the EEOC provided a letter dated October 8, 2014, wherein the EEOC 'acknowledge[d] receipt of the above-numbered charge of employment discrimination.'" (*Id.* at *4). While Defendants point to the quoted language to support their argument, Defendants misread *Green*. It is clear from *Green*'s holding, analysis and the context of the quoted statement that it was the date of the EEOC's receipt of the letter, and not the content of the letter, which the Court considered significant.

Further, Plaintiff's operative Complaint sets forth the dates of the Intake Questionnaire and the letter from the EEOC, acknowledging receipt and review. Plaintiff alleges that, in response to the letter from the EEOC, he "hired undersigned counsel and responded to the EEOC's request for more information via letter, dated August 21, 2017, … [which] contained specific facts, names, dates, locations, addresses, etc. regarding Plaintiff's discrimination claims, and re-i[terated] Plaintiff's earlier request from his Intake Questionnaire that the EEOC begin an investigation and file a charge of discrimination against the Defendants."[6] (Doc. 43, pp. 21-22). Thus, the operative Complaint reflects allegations that the Intake Questionnaire was intended to be a "charge", that it was received and reviewed subject to certain questions in order to "continue" the process, and that

---

reviewed. The information you gave us is not enough to determine how we should handle this case. More information is needed before we can continue. Our experience is that an interview is the best way to obtain the needed information. Please call us as soon as possible." (Doc. 43, p. 39).

[6] Plaintiff argues in his opposition that he timely responded to the July 5, 2017, letter and participated in an interview. No date is given as to when this occurred. (Doc. 53, p. 4). Significantly, these facts are not alleged in the operative Complaint, only in the opposition. If Plaintiff's argument is correct, simple discovery will easily identify the specific dates of the interview and communications between the EEOC and Plaintiff, if that occurred.

a response on behalf of Plaintiff contained a clear request to charge the named parties with discrimination.

Based on the allegations of the operative Complaint, the Intake Questionnaire filed by Plaintiff with the EEOC, and the applicable legal authority discussed above, the Court finds that Plaintiff has sufficiently alleged that he intended to file and filed a "charge" with the EEOC in order to commence the administrative process. At this stage of the litigation and on a motion to dismiss pursuant to Rule 12(b)(6), the Court finds the allegations to be sufficient. *See also, Cargo v. Kansas City Southern*, No. 05-2010, 2009 WL 3010834, *2-3 (W.D. La. Sept. 16, 2009)(citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008); *see also Beckham v. Nat'l R.R. Passenger Corp.*, 590 F.Supp.2d 82, 86 (D.D.C. 2008)(where an intake questionnaire and supplemental questionnaire with attached affidavit containing detailed alleged facts were construed to be requests for agency action and therefore qualified as a charge); *Goree v. Lincoln Parish Detention Center Com'n*, No. 09-745, 2010 WL 4295328, n. 7 (W.D. La. Oct. 22, 2010)(where there was no charge of discrimination in the record; the court considered the intake questionnaire as a "sufficient charge of discrimination"); and *Stevenson v. Delta Airlines, Inc.*, No. 17-6003, 2019 WL 2603635, *7 (E.D. La. June 25, 2019)(where the court would have considered the intake questionnaire to be a charge of discrimination if the plaintiff had checked the box stating that he intended to file a charge).

The Court now turns to whether the Intake Questionnaire was timely filed. A charge of discrimination, or an intake questionnaire that is accepted and treated as a charge of discrimination, must be filed within 300 days of the allegedly discriminatory action. Defendants rely upon the May 26, 2017, date as the last date on which any discriminatory action could have been taken. Plaintiff's operative Complaint contains the May 26, 2017 date, as well as a date of October 27,

2017, when Plaintiff claims he was constructively discharged. Therefore, a charge of discrimination must have been filed by March 22, 2018. The Intake Questionnaire was filed on June 6, 2017, acknowledged by the EEOC on July 5, 2017, and further responded to by Plaintiff's counsel on August 21, 2017 – all well before the March 2018 deadline. The Court also notes that were one to calculate the timeliness of Plaintiff's claims from the date of alleged constructive discharge, Plaintiff filed two Charges of Discrimination, the EEOC issued a Notice of Charge of Discrimination, and Plaintiff received a Right to Sue letter, all before August 21, 2018.

Finally, Defendants separately address the timeliness of Plaintiff's failure to promote claim, (Doc. 50, p. 20), and hostile work environment claim, (Doc. 50, p. 22), under Title VII. Defendants' argument as to timeliness is the same as above (that an intake questionnaire is not a charge of discrimination) with the exception of highlighting that since Plaintiff last worked on May 26, 2017, he could not have been promoted after that date, (Doc. 50, p. 20), or subjected to race-based harassment after that date, (Doc. 50, p. 22). While this is true, the same analysis as is set forth above applies to these claims under Title VII.

For the above reasons, the Court finds that Plaintiff timely asserted his claims under Title VII. Defendant's motion to dismiss Plaintiff's claims under Title VII due to untimeliness is denied.

2. **Failure to Exhaust Administrative Remedies – disparate pay and retaliation claims**

a. *Disparate pay claim*

Defendants argue that Plaintiff's claim of disparate pay based on racial discrimination under Title VII should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. 50, pp. 20-22). Specifically, Defendants argue that the EEOC Charge of Discrimination filed on May 29, 2018, and the EEOC Charge of Discrimination filed on June 27, 2018, did not include a disparate pay claim within the scope of allegations charged. (*Id.*).

Alternatively, Defendants argue that the disparate pay claim is untimely as it was not asserted within 300 days of the date of last payment. (Doc. 50, p. 22). Defendants make no mention of the Intake Questionnaire with regard to the disparate pay claim.

Plaintiff points to the August 21, 2017 letter from Plaintiff's counsel to the EEOC as well as his May 29, 2018 Charge of Discrimination, which generally complain that Plaintiff, an African-American, was paid less ($22.50 per hour) than the other employees with the same job ($25.00 per hour), to show that his allegations can "reasonably be extended to encompass Plaintiff's claim for disparate pay/wage discrimination". (Doc. 53, pp. 8-9).

The Court notes that Plaintiff's Intake Questionnaire makes no mention of rate of pay. (Doc. 43, pp. 34-37). However, the letter from Plaintiff's counsel to the EEOC dated August 21, 2017, states that "Auger's conduct against Mr. Clark has ranged from wage discrimination to creating a hostile work environment". (Doc. 43, p. 41). The letter then specifically addresses "his claim for wage discrimination" by stating:

> First, pertaining to his claim for wage discrimination, Mr. Clark has never received a promotion in the twenty-two (22) years that he has been an employee of Auger. Mr. Clark has performed the job of an operator at Auger's instruction but was never promoted to the position of operator despite receiving multiple certifications from Auger to operate machinery. According to Mr. Clark, the average starting pay for an operator at Auger is approximately $25.00/hr. After twenty-two (22) years of service, Mr. Clark's pay never reached more than $22.50/hr. Throughout the entirety of Mr. Clark's time at Auger, there may have been three (3) African-Americans in management positions. He does not recall any African-American operators or any other position higher than a laborer. However, Mr. Clark does recall many of his white co-workers whom started off as laborers have received promotions to operators and other supervisory positions within the company.

(Doc. 43, pp. 41-42). The letter's concluding paragraph states that Plaintiff was "discriminated against due to his race" and that "Mr. Clark was paid less". The letter requests "[f]or these reasons" that the EEOC "file a charge of discrimination against his employers". (Doc. 43, p. 43). This same letter was attached to Plaintiff's first formal Charge of Discrimination and incorporated

therein. (Doc. 43, pp. 45-48). In his second formal Charge of Discrimination, Plaintiff reiterates the allegations that his pay was $22.50 per hour for 22 years and never reached the minimum hourly pay of $25.00 per hour. He specifically states that he was "discriminated against because of my race" and states that he was "paid less". (Doc. 43, p. 52). Finally, Plaintiff's operative Complaint mirrors these same factual allegations and avers that "[w]hite employees" made $25.00 per hour and Plaintiff only earned $22.50 per hour. Defendants allegedly "paid higher wages to Plaintiff's white co-workers who were laborers with less experience and education than Plaintiff." (Doc. 43, p. 8).

While the quoted statements from the complaints to the EEOC seem to confuse a failure to promote claim with a disparate pay claim, it is clear that Plaintiff's counsel alleged that Plaintiff was discriminated against based on his race and that there were instances of wage discrimination as he was paid less than the starting wage for his position, which he held for 22 years. The fact that the statement of facts to the EEOC could have been clearer or more artfully relayed is of no moment; the question is whether Plaintiff attempted to exhaust his administrative remedies for a claim of disparate pay and sufficiently asserted facts from which an investigation might reasonably grow. *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).

In *Green v. Hospital Service District of West Feliciana Parish*, No. 16-223, 2017 WL 1097194, *6 (M.D. La. Mar. 22, 2017), the defendant made the same argument of failure to exhaust administrative remedies for a disparate pay claim as the Defendants make here. In *Green*, however, the charge of discrimination at issue only contained allegations regarding promotion. There were no allegations of any sort regarding rate of pay, disparate pay, or wage discrimination. In fact, the Court in *Green* stated that "[n]othing" in the statement from the plaintiff's charge "would place [the] [d]efendants on notice that [plaintiff] alleged a claim for disparate pay." The

allegations in the charge in *Green* were different than those at issue here. Therefore, although the same argument is being advanced, a different result is reached.

The Fifth Circuit has held that a Title VII plaintiff is not required to "recite a specific incantation" or to "allege a prima facie case before the EEOC" in order to exhaust his administrative remedies. *Pacheco*, 448 F.3d at 792. Instead, the "court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 789 (internal quotations and citations omitted). Other courts have found that facts similar to those presented here satisfy the general requirements for sufficiently exhausting administrative remedies. *See, Fairley v. Wal-Mart Stores, Inc.*, 216 F.Supp.3d 708, 733-34 (E.D. La. Oct. 31, 2016)(where the plaintiff's intake questionnaire stated that she believed she was paid less than male co-workers and that she was led to believe that she would not be promoted because of her gender, and the court found that a pay discrimination investigation could reasonably have been expected to grow out of the EEOC charge). The Court finds that Plaintiff sufficiently exhausted his administrative remedies with regard to a claim of disparate pay or wage discrimination based on race.

Alternatively, Defendants argue that Plaintiff's disparate pay/wage discrimination claim is untimely as Plaintiff did not make allegations of disparate pay within 300 days of the last "paycheck reflecting a discriminatory pay decision". (Doc. 50, p. 22). Defendants calculate the 300-day time period from the first formal EEOC Charge of Discrimination, dated May 29, 2018, which computes to a "paycheck reflecting a discriminatory pay decision" received on or after August 1, 2017. Since Plaintiff's last day of work was May 26, 2017, Defendants argue that his claim for disparate pay or wage discrimination is time-barred. (*Id.*). For the same reasons

explained above, Defendants' argument fails to account for the August 21, 2017, letter from Plaintiff's counsel to the EEOC, which, as quoted above, sets forth allegations of wage discrimination, which were later incorporated into the May 29, 2018, EEOC Charge of Discrimination. Applying the same computation as set forth above regarding the timeliness of all of Plaintiff's claims under Title VII, the Court finds that Plaintiff timely asserted a claim of disparate pay or wage discrimination under Title VII. Defendants' motion seeking to dismiss Plaintiff's disparate pay or wage discrimination claim is denied.

<em>b.      Retaliation claim</em>

Defendants make the same arguments as set forth immediately above in seeking dismissal of Plaintiff's retaliation claim. Relying solely on Plaintiff's two formal Charges of Discrimination, Defendants argue that the charges do not include allegations of retaliation; therefore, Plaintiff failed to exhaust his administrative remedies with regard to that claim. (Doc. 50, pp. 23-24). Defendants acknowledge that Plaintiff checked the retaliation box on his Intake Questionnaire; however, Defendants seek to dismiss the questionnaire "as a matter of law," referring to their primary argument, addressed above, that an intake questionnaire is not a charge of discrimination. (Doc. 50, p. 23).

Plaintiff responds that Plaintiff's Intake Questionnaire dated June 6, 2017, reflects that Plaintiff checked the box for retaliation in response to the form's question, "What is the reason (basis) for your claim of employment discrimination?". (Doc. 53-1, p. 3). Additionally, Plaintiff attached a detailed statement of facts to his questionnaire which supports his claim of retaliation: after Plaintiff reported to Dale Beck, Project Manager for Augers, in May of 2017, the noose incidents and comments of wishing that he had died, Plaintiff was "immediately moved" off his job and placed on another job site, (Doc. 53-1, p. 9); that he made less money at the new job, but

was moved back to his original position after Greg Menard was fired due to the noose incidents, (Doc. 53-1, pp. 10-11); that when Plaintiff returned to his original position, his co-workers treated him "real cold" because they believed he was the reason Menard was fired, (Doc. 53-1, p. 11); and from that point forward, Plaintiff was "afraid for [his] life" and suffered until he took medical leave, (*id.*). Plaintiff argues that the August 2017 letter from Plaintiff's counsel to the EEOC states that Plaintiff was "terminated/reassigned" due to the years of ongoing harassment and discriminatory behavior, implying a claim of retaliation. (Doc. 53, p. 8 (citing Doc. 43, p. 48)). This letter was attached to and incorporated by reference into the May 2018 formal Charge of Discrimination. While Plaintiff did not "check the box" for retaliation on his formal Charges of Discrimination, he did so in his initial complaint, the Intake Questionnaire. Further, he pleads facts supporting a claim of retaliation in his statement attached to his Intake Questionnaire.

Federal district courts within Louisiana, including this Court, have found that administrative remedies were not exhausted only when the plaintiff failed to "check the box" *and* allege any facts supporting the retaliation claim. *See, e.g., Oramous v. Military Dep't of Louisiana*, 2007 WL 2344921, *2 (E.D. La. Aug. 15, 2007)(where the plaintiff did not check the retaliation box and did not mention any retaliatory conduct in the charge; therefore, the plaintiff failed to exhaust her administrative remedies); *May v. FedEx Freight Se., Inc*., 649 F.Supp.2d 451, 456 (M.D. La. 2009)(that the plaintiff did not check the retaliation box and did not make any allegations of retaliation "confirmed" that she failed to exhaust her administrative remedies, citing to a "plethora of Fifth Circuit jurisprudence"); and *Givs v. City of Eunice*, 512 F.Supp.2d 522, 536-37 (W.D. La. May 21, 2007)(where the plaintiff checked the retaliation box but did not allege "*any facts* concerning retaliation" that would have put the EEOC on notice of a possible claim)(italics in original).

Based on the same reasoning as set forth above regarding Plaintiff's disparate pay claim, Plaintiff's Intake Questionnaire sufficiently sets forth facts from which an EEOC investigation could reasonably have been expected to grow; therefore, the Court finds that Plaintiff exhausted his administrative remedies for his retaliation claim.

Defendants' alternative argument that Plaintiff's retaliation claim is untimely also fails as the argument is based upon the dates of the formal Charges of Discrimination and does not account for the allegations set forth in the Intake Questionnaire, which would render Plaintiff's retaliation claim timely.

### 3. Failure to State a Claim – constructive discharge claim

Plaintiff alleges in his operative Complaint at Paragraph 78:

> This hostile work environment ultimately led to Plaintiff being constructively discharged from Auger Services, Inc. on or around October 27, 2017. The very harassment that Plaintiff endured at the hands of his supervisor and other employees ultimately culminated in his termination.

(Doc. 43, p. 19). The Complaint also reflects that Plaintiff was "afraid to return" to work. (*Id.*). The Complaint contains no other allegations specifically in support of a claim of constructive discharge; however, Plaintiff incorporates by reference the "aforementioned threats and incidents of racially charged physical and verbal abuse", which includes the name-calling, noose incidents, and wishes that Plaintiff had died. (*Id.*).

In moving to dismiss this claim, Defendants contend that Plaintiff has failed to plead sufficient facts and the necessary elements to establish a constructive discharge claim. (Doc. 50, pp. 29-32). In response, Plaintiff simply argues that "Plaintiff sufficiently pled a claim for constructive discharge." (Doc. 53, p. 10).

A constructive discharge occurs when the employer makes working conditions "so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir. 1994); *Edwards v. Smitty's Supply, Inc*., 2016 WL 3667361, *7 (E.D. La. July 11, 2016). The working conditions must have been "so difficult or unpleasant that [a] reasonable person in [the plaintiff's] shoes would have felt compelled to resign." *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993), *cert. denied*, 510 U.S. 1046 (1994). In assessing whether a plaintiff has plead a viable constructive discharge claim, courts consider a variety of factors, including the following:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not.

*Barrow,* 10 F.3d at 297; *Edwards*, at *7. The burden of proof lies on the employee, and proof is not required that the employer imposed intolerable working conditions with the specific intent to force the employee to resign. *McKnight v. Automatic Coin Enterprise,* 1997 WL 79447, *3 (E.D. La. 1997); *Green v. Sutherlin*, 2000 WL 222853, *2 (E.D. La. Feb. 17, 2000).

In this case, Plaintiff's constructive discharge claim is based on conduct that, on its face, fits only within the fifth factor. Specifically, the allegations of multiple incidents involving a noose and allegations of co-workers telling Plaintiff that they wished that he had died clearly rise to a highly egregious level of harassment and humiliation. *See, Abner v. Kansas City Southern R. Co*., 513 F.3d 154, 163 (5th Cir. 2008)(punitive damages awarded for wire noose display found to be "reprehensible discrimination" and "most egregious discrimination" under Title VII); *Fennell v. Marion Independent School Dist*., 804 F.3d 398, 409 (5th Cir. 2015)(noose and racial epithets evidence a "severe, pervasive and objectively offensive nature of … harassment"). Plaintiff

alleges many other incidents contributing to a racially-charged working environment. Plaintiff incorporates the pages and details of these allegations at Paragraph 77 to support a claim of a hostile work environment, which Plaintiff claims led to his constructive discharge. (Doc. 43, p. 19).

Taking Plaintiff's allegations as true, the Court finds them sufficient at this stage to show that Plaintiff was "harassed," "discriminated against," or "humiliated" by his co-workers and supervisors. Constructive discharge, however, requires more than just harassment, discrimination, or humiliation. The employer's challenged conduct must be such that "a reasonable employee in [Plaintiff's] situation would have felt so compelled" to resign. The conditions must be "objectively intolerable". *McKnight*, *3; *see also, Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 772 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016). The Court finds that, while Plaintiff's allegations specifically related to constructive discharge are vague and sparse, it can be inferred that the harassment, discrimination, and humiliation that he claims to have experienced was "objectively intolerable" and calculated to encourage his resignation. Specifically, incidents involving a noose and threats that co-workers wished he had died are sufficiently alarming to withstand Rule 12(b)(6) dismissal. Should discovery reveal that Plaintiff's work environment and the alleged harassment was unrelated to his departure and/or that Plaintiff was not constructively discharged, his claim may be more properly challenged under the standards of a motion for summary judgment. For purposes of this stage of the litigation, the allegations state a plausible claim for constructive discharge under both Title VII and the LEDL.[7] For these reasons, Defendants' motion on this issue is denied.

---

[7] Plaintiff is also bringing a claim for constructive discharge under the Louisiana Employment Discrimination Law ("LEDL"). La. R.S. 23:301 *et seq*. Defendants seek to dismiss Plaintiff's constructive discharge claim under both Title VII and the LEDL on the same grounds. LEDL claims are analyzed under the same framework as Title VII.

## B. Timeliness of Claims under the LEDL

Plaintiff has asserted claims of discrimination under the Louisiana Employment Discrimination Law. In the present motion, Defendants seek dismissal of Plaintiff's claims under the LEDL as those claims have prescribed. Plaintiff does not dispute that claims under the LEDL are subject to a one-year prescriptive period. (Doc. 50, p. 24 (citing La. R.S. 23:303(D); *White v. State Farm Mut. Auto. Ins. Co.*, 479 F. App'x 556, 560 (5th Cir. 2012)); Doc. 53, p. 9). However, Plaintiff argues that prescription is "suspended during administrative review or investigation of the claim conducted by the EEOC", without such suspension lasting longer than six months. (Doc. 53, pp. 9-10 (citing *Minnis v. Bd. of Supervisors*, 55 F.Supp.3d 864, 874 (M.D. La. 2014)). Therefore, Plaintiff concludes, he has 18 months from the date of the last alleged discriminatory act to file suit. (Doc. 53, p. 10 (citing *Senegal v. Suddenlink Commc'ns*, No. 14-3447, 2016 WL 595482, *4 (W.D. La. 2016)). Defendants agree that Plaintiff is entitled to a suspension up to six months, but disagrees that Plaintiff had 18 months to file his suit. (Doc. 50, p. 24 (citing *Walton-Lentz v. Innophos, Inc.*, No. 08-601, 2011 WL 721491, *5 (M.D. La. Feb. 22, 2011); La. R.S. 23:303(D)).

Plaintiff argues that his claims with the EEOC were under investigation until the Right to Sue letter was issued, which occurred on July 7, 2018. The date of the last alleged discriminatory acts was in "April/May 2017", according to Plaintiff. (Doc. 53, p. 10). Eighteen months from "April/May 2017" is October/November 2018. Suit was filed on September 11, 2018. Therefore, Plaintiff argues, his claims under the LEDL are timely. (*Id.*).

---

Therefore, where a plaintiff has stated a claim of constructive discharge under Title VII, the LEDL claim must also stand. *Credeur v. State of Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 791 (5th Cir. 2017).

Defendants' computation differs from that of Plaintiff. Defendants work backwards from the September 11, 2018, suit-filing date and argue that the one-year mark for discriminatory conduct is September 11, 2017. Then, Defendants argue that Plaintiff benefits from a suspension because he filed a charge of discrimination. Defendants then use the date of the first formal charge, May 29, 2018, and calculate 38 days until the Right to Sue letter was issued. Therefore, Defendants argue, Plaintiff is entitled to 38 days, not six months, in addition to the one year. Applying 38 days to the one-year mark of September 11, 2017, Defendants conclude that any alleged discriminatory conduct that occurred before August 4, 2017, is time-barred. Since all of Plaintiff's claims of alleged discriminatory conduct occurred before the end of May 2017, Defendants argue that all of Plaintiff's LEDL claims are time-barred.

Discrimination claims brought under the LEDL are subject to a one-year prescriptive period. La. R.S. 23:303(D). "This one-year prescriptive period commences to run from the day injury or damage is sustained." *King v. Phelps Dunbar, L.L.P.,* 743 So.2d 181**,** 187 (La.1999). The one-year prescriptive period for LEDL claims is suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission, but no such suspension "shall last longer than six months." La. R.S. 23:303(D).

In computing the tolling of prescription of Plaintiff's claims under the LEDL, the Court must first look to when Plaintiff's cause of action accrued, which is when Plaintiff filed his "charge", and then determine how much time expired until the EEOC issued the right to sue letter. Here, Plaintiff alleges that his Intake Questionnaire was intended to be and should be considered to be his initial complaint and "charge of discrimination" to the EEOC. Plaintiff alleges that his formal charges were supplements to his original complaints. For purposes of this motion under

Rule 12(b)(6), the Court will utilize the June 6, 2017 date of the Intake Questionnaire. The Right to Sue letter was issued on July 6, 2018, which is 13 months later. Plaintiff is only entitled to a maximum of a six-month suspension. Therefore, a six-month suspension will be applied. The prescriptive period began to run on May 26, 2017, the date Plaintiff left on medical leave and the last possible date of an alleged discriminatory act. The 18-month prescriptive period (consisting of the one-year prescriptive period, plus the maximum six-month suspension period) ended on or about November 26, 2018.[8] Therefore, based on the allegations on the face of the operative Complaint and with all deference to the Plaintiff, when the federal complaint was filed on September 11, 2018, the LEDL claims were timely.

In the same manner that Defendants singled-out Plaintiff's claims of failure to promote, disparate pay, hostile work environment, and retaliation under Title VII, arguing that they were untimely, Defendants single-out these same claims under the LEDL, arguing that they are untimely. (Doc. 50, pp. 25-26). The Court incorporates by reference its analysis of Plaintiff's allegations of Defendants' failure to promote, disparate pay, hostile work environment, and retaliation contained in the various documents submitted to the EEOC and in Plaintiff's operative Complaint as set forth above. That, combined with the Court's general finding that Plaintiff's claims under the LEDL appear to be timely, leads the Court to find that these specific claims are timely. Therefore, Defendants' timeliness challenge is denied with regard to all claims under the LEDL.

---

[8] *See, Green v. United Parcel Service, Inc*., 2019 WL 176307, *3 (E.D. La. Jan. 11, 2019)(for a computation of the suspension of the tolling of prescription and the calculation of the tolling of prescription of claims under the LEDL); and *Bourgeois v. LBC of Baton Rouge, LLC*, 2014 WL 4180956, *3 (M.D. La. Aug. 20, 2014).

**C.    Timeliness of Claims under La. Rev. Stat. 23:967 and La. Rev. Stat. 51:2256**

Plaintiff makes claims of retaliation pursuant to the Louisiana Whistleblower Statute, La. R.S. 23:967. (Doc. 43, p. 26). There is no prescriptive period specifically set out in the Louisiana Whistleblower Statute. *See* La. R.S. 23:967. However, "[a]bsent any specification within La. R.S. 23:967, [the plaintiff's] cause of action thereunder is subject to the general one-year prescriptive period for delictual actions provided in La. Civ. Code art. 3492. *Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2,* 790 So.2d 725, 733 (La.App. 5 Cir. 6/27/01). Prescription commences to run from the day the injury or damage is alleged to have been sustained. La. C.C. art. 3492; *Nolan*, 790 So.2d at 733; *Langley v. Pinkerton's Inc*., 220 F.Supp.2d 575, 581 (M.D. La. 2002). Prescription for retaliation claims under La. R.S. 23:967 is not suspended during administrative review or investigation. *Langley v. Pinkerton's Inc.,* 220 F.Supp.2d 575, 581 (M.D.La.2002); *Hunter v. Jefferson Parish Public School System*, 2017 WL 2910992, *7 (E.D. La. July 7, 2017); *Jones v. City of Monroe*, 2019 WL 5488603, *7 (W.D. La. Oct. 8, 2019).

Plaintiff has also asserted a claim of conspiracy to violate human rights and discrimination laws pursuant to the Louisiana Commission on Human Rights, La. R.S. 51:2256. (Doc. 43, p. 25). The prescriptive period and calculation of the tolling of prescription applicable to claims under La. R.S. 51:2256 also apply to La. R.S. 23:967. *See, Roth v. N.J. Malin & Associates, Inc*., 1998 WL 898367 (E.D. La. Dec. 21, 1998).

The last possible date of alleged retaliation or conspiracy to retaliate that can be gleaned from the operative Complaint is May 26, 2017. Although Plaintiff pleads that he was constructively discharged on October 27, 2017, he specifically attributes the discharge to a hostile work environment. (Doc. 43, p. 19). Therefore, suit must have been filed by May 26, 2018, one year from Plaintiff's last day of work before taking medical leave. Suit was not filed until

September 11, 2018.  Plaintiff's claims of retaliation and conspiracy under La. R.S. 23:967 and La. R.S. 51:2256 are therefore time-barred.  Defendants' motion is granted as to these claims, and they are dismissed with prejudice.

### D.    Timeliness of Claims under State Law

Plaintiff pleads claims of negligent and intentional infliction of emotional distress and assault and battery under Louisiana state law.  (Doc. 43, pp. 26-28).  The parties do not dispute that a one-year statute of limitation applies to these Louisiana state law claims.  *See Hoover v. SOS Staffing Servs., Inc*., 584 F. App'x 190, 191 (5th Cir. 2014), citing *Rivers v. Zwolle*, No. 10-CV-0578, 2011 WL 1103792, at *2 (W.D. La. Mar. 22, 2011) ("Claims for intentional infliction of emotional distress are also subject to a one-year prescriptive period."); *Tickle v. Smith*, No. 15-CV-6758, 2016 WL 3430679, at *3 (E.D. La. June 22, 2016) ("[F]or the battery ... and intentional and negligent infliction of emotional distress claims the prescriptive period is one year because they are all delictual actions."); La. Civ. Code art. 3492. The bases for these tort claims are the stressful and damaging work environment that occurred prior to May 26, 2017, and the noose events that occurred at various dates prior to May 2017. (Doc. 43, pp. 26-28). Plaintiff did not file suit in this Court until September 11, 2018, long past the May 2018 prescriptive date.[9] Therefore, Plaintiff's claims of negligent and intentional infliction of emotional distress and assault and battery are time-barred and dismissed with prejudice.

---

[9] Plaintiff's reliance upon *Bustamento v. Tucker*, 607 So.2d 532 (La. 1992), to support his argument that the one-year prescriptive period did not apply to his claim of intentional infliction of emotional distress is misplaced.  (Doc. 53, p. 10).  The Louisiana Supreme Court in *Bustamento* allowed the tolling of the one-year prescriptive period to commence from the last act of harassment.  However, the Court applied a one-year prescriptive period.

E. **Preclusion of Negligence Claims by the Louisiana Workers' Compensation Act**

Defendants argue that, in addition to Plaintiff's state law claims being untimely, the claims are also barred by the provisions of the Louisiana Workers' Compensation Act. (Doc. 50, pp. 28-29). Because this Court has found that Plaintiff's state law claims are time-barred and, therefore, dismissed on this ground, the Court declines to address Defendants' alternative argument at this time. The Court denies Defendants' motion on this issue as moot.

F. **Claims Against Defendant PLH**

Plaintiff also named PLH as a Defendant. In the present motion, Defendants seek dismissal of Plaintiff's claims against PLH because Plaintiff did not allege facts sufficient to state a plausible claim of relief against PLH. First, Plaintiff did not specifically allege an employment relationship between Plaintiff and PLH, and the employment relationship is necessary to maintain Plaintiff's claims. (Doc. 50, p. 32).

Instead of a direct employer/employee relationship, Plaintiff claims in his complaint that PLH and Auger are a "single integrated enterprise or single employer" because Auger "is a wholly-owned subsidiary of" PLH. Defendants argue that PLH, as the parent corporation, is not potentially liable as the employer of Plaintiff. A parent company, as PLH is alleged to be, is not considered the employer of its subsidiary's employees. *Tipton v. Northrup Grumman Corp.*, 242 F. App'x 187, 189 (5th Cir. 2007)(citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)). It is the employer that is potentially liable for the alleged acts of employment discrimination. 42 U.S.C. § 12112(a); *Dean v. City of New Orleans,* Civ. A. No. 11-2209, 2012 WL 2564954 (E.D. La. July 2, 2012), *aff'd* 544 F. App'x 353 (5th Cir. 2013)(ADA requires an employer-employee relationship); *Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 471 (6th Cir.

2008).  Since Auger is the only employer of Plaintiff and, therefore, the only potentially liable party, PLH should be dismissed.  (Doc. 50, pp. 32-33).

In the operative Complaint, Plaintiff alleges that PLH is the parent company of Auger and that PLH and Auger are a "single integrated enterprise or single employer", (Doc. 43, pp. 4-5); however, Plaintiff does not allege any facts supporting a "single integrated enterprise or single employer" theory, that PLH acted as the employer of Plaintiff by being a final decision-maker, or that PLH exercised control over Plaintiff sufficient to render the parent company exposed to potential liability.  (Doc. 43).  In response to the instant motion, Plaintiff wholly ignored the issue of PLH as the direct employer of Plaintiff and/or the "single employer" theory.  Plaintiff did not address PLH as a named Defendant and potentially liable party.  (Doc. 53).  Defendants argue that Plaintiff's claims adverse to PLH are therefore abandoned and/or waived.  (Doc. 58, p. 5).  The Court agrees.

"'The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal.'"  *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F.Supp.3d 620, 634 (M.D. La. 2018)(quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F.Supp.2d 738, 748, n. 10 (S.D. Tex. 2003)(citations omitted)); *see also United States v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010)(defendant's failure to offer any "arguments or explanation … is a failure to brief and constitutes waiver").  "'By analogy, failure to brief an argument in the district court waives that argument in that court.'"  *JMCB*, 336 F.Supp.3d at 634 (quoting *Magee*, 261 F.Supp.2d at 748, n. 10); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014)("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."(citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, *5 (S.D.

Tex. Oct. 26, 2010)(granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Applying the waiver standard, the Court will dismiss Plaintiff's claims against PLH. Plaintiff failed to respond to Defendants' arguments about these claims and therefore has effectively abandoned these claims. *See JMCB*, 336 F.Supp.3d at 634 ("Plaintiff did not respond to the substance of any of [defendant's] arguments …. On this ground alone, the Court could dismiss Plaintiff's Amended Complaint." (numerous internal citations omitted)); *see also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F.Supp.3d 663, 672 (M.D. La. 2019)(finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia, JMCB*, 336 F.Supp.3d at 634)). Therefore, Plaintiff's claims against PLH are dismissed.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Auger Services, Inc. and PLH Group, Inc.'s Motion to Dismiss (Doc. 46) is hereby **GRANTED IN PART AND DENIED IN PART**;

Defendants' motion is **GRANTED** in that all claims against PLH Group, Inc. are dismissed with prejudice; all claims under La. R.S. 23:967 and La. R.S. 51:2256 are dismissed with prejudice; and Plaintiff's claims of negligent and intentional infliction of emotion distress and assault and battery are dismissed with prejudice.

Defendants' motion is **DENIED** as moot insofar as it seeks dismissal of Plaintiff's Louisiana tort claims based on the exclusivity of the Louisiana Workers' Compensation Act.

Defendants' motion is **DENIED** in all other respects.

Signed in Baton Rouge, Louisiana, on March 10, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**